UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TYLER SMITH AND SHERRI SMITH ) | |
| AS NEXT FRIEND TO TANNER SMITH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:10-cv-00845 |
| v. ) | Judge Trauger |
| ) | |
| ) | |
| PRUDENTIAL INSURANCE ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## ORDER REGARDING EXPERTS

In its Reply to the Plaintiffs' Response to its Motion for Summary Judgment, the defendant, Prudential Insurance Company of America ("Prudential"), asserted various evidentiary objections to admission of the expert reports and underlying opinions of three experts retained by the Plaintiffs pursuant to Fed. R. Civ. P. 26(a)(2).[1] (*See* Docket No. 73.) As set forth in the court's decision denying the motion for summary judgment, the court did not consider the reports and associated opinions of these challenged experts in resolving the motion and, therefore, did not reach Prudential's asserted objections to the admissibility of these experts' opinions at trial. Because of the posture in which Prudential raised its evidentiary challenges to the Plaintiffs' experts, Prudential's arguments were necessarily abbreviated and did

---

[1]*See* Docket No. 56, Deposition of David Street with Exhibits ("Street Dep."), expert report attached at Ex. 1 ("Street Report"); Docket No. 57, Deposition of Thomas Price with Exhibits ("Price Dep."), expert report attached at Ex. 1 ("Price Report"); Docket No. 70, Deposition of William Manion Vol. I with Exhibits ("Manion Dep. I"), expert report attached at Ex. 1 ("Manion Report"), and Docket No. 71, Deposition of William Manion Vol. II ("Manion Dep. II").

1

not afford the Plaintiffs an opportunity to respond. Furthermore, because Prudential did not rely upon its retained experts at the summary judgment stage, the Plaintiffs did not need to – nor did they – assert any challenges to Prudential's experts in that context.

As set forth in more detail below, it appears that Prudential has raised valid concerns as to the Plaintiffs' experts that require further explanation from both sides. Prudential challenges some of the underlying evidence on which these experts rely and asserts *Daubert* challenges to their qualifications and methodology. Given the complexity of the evidentiary objections and the *Daubert* challenges already raised by Prudential – and that may be raised by the Plaintiffs to Prudential's experts– the court will require targeted briefing from the parties to resolve these matters before trial.

To aid the parties in focusing the issues in dispute and to assist the court in resolving the putative expert-related motions, the court will require the parties to file, in advance of briefing these motions, an expert statement for each expert witness consistent with Local Rule 39.01(c)(6)(c). As stated therein, the written statement "shall contain every material fact and/or opinion to which the witness would testify on direct examination if the witnesses were asked the appropriate questions." Although such a statement typically is filed closer to trial, the court has discretion to order its production at an earlier date and finds that, under the circumstances presented here, earlier production of these statements will be beneficial.

I. **Briefing Schedule**

This briefing schedule shall apply to both parties.

- March 2, 2012: The parties shall file expert statements on behalf of their retained experts in compliance with Local Rule 39.01(c)(6)(c).

- March 23, 2012: Each party may file a consolidated motion *in limine*

concerning the expert opinions and testimony of the opposing party's experts.[2] The motions may address underlying evidentiary challenges (as relate to the challenged experts' opinions) and/or *Daubert* challenges, as appropriate.

- April 13, 2012: The opposing party may file a consolidated response.[3]

- April 27, 2012: The moving party may file a consolidated reply.

Upon request by the parties, *Daubert* hearings may be scheduled.

## II. Specific Guidance

Based on its initial analysis of Prudential's objections, the court offers the following guidance as to briefing regarding Plaintiffs' experts.[4]

### A. David Street

David Street is a board-certified psychiatrist and forensic psychiatrist. His opinions purport to reflect the results of what Street describes variously as a "forensic psychiatric autopsy," "psychiatric autopsy," or "psychological autopsy" of Gary Smith, based on Street's analysis of record evidence, certain medical literature, and his personal interviews of Smith's friends and relatives. (*See* Street Dep. at 47:12-20; Street Report at p. 2 ¶ 1.) Street testified that

---

[2]In briefing the motions, the parties may assume the court's understanding of the background facts of the case.

[3]If a party – particularly the Plaintiffs – contends that certain witnesses will establish challenged but as-yet-inadmissible/unsupported facts through direct testimony at trial, the party should so state and should include affidavits from the relevant witnesses establishing these facts in an admissible fashion - *i.e.*, through witnesses attesting to the facts by personal knowledge, not by speculation or mere conjecture. Absent specific relief requested by the parties, the court will rule based on the evidentiary record before it when briefing on the motion(s) is completed.

[4]Because Prudential did not rely on its own experts in its Motion for Summary Judgment, the court cannot offer similar guidance as to putative challenges – if any are forthcoming – to Prudential's experts. The court's guidance is based on the existing record, which of course may change based on the Local Rule 39.01 statements.

his work on this case reflects the first time he has ever performed this type of analysis. (Street Dep. 50:19-20.) Street's analysis outlines certain suicide risk factors and attempts to assess their applicability to Smith. (Street Report at pp. 5-7.) Based on this analysis and his consideration of certain alleged aspects of the crime scene and the manner of Smith's death, Street concludes that Smith's death "was not the result of a suicidal act." (Street Report at p. 7.)

Prudential contends that Street's opinions are inadmissible because (1) they are based on hearsay interviews that are inadmissible and inherently unreliable; (2) Street's methodology is unreliable; and (3) Street is not an expert in the field for which he is offering an opinion. The court requires additional explanation concerning the nature of the interviews conducted by Street, the degree to which Street relies on these and other hearsay materials and whether, in the context of rendering an opinion, Street reasonably relied on those materials, even if they are otherwise inadmissible. *See, e.g.*, Moore's Federal Practice § 56.94[4][a] (3d ed. 2011). The court is particularly concerned about Street's significant reliance on unsworn hearsay interviews of prospective trial witnesses made outside the presence of opposing counsel. The court also requires further explanation concerning the methodology behind a "forensic psychiatric autopsy/psychiatric autopsy/psychological autopsy" and whether it meets *Daubert* standards, ideally by reference to instances in which courts have admitted or excluded the presentation of this type of opinion testimony at trial. Finally, Prudential should identify which aspects of Street's opinions it alleges fall outside Street's area(s) of expertise and why.

### B. Thomas Price

Thomas Price is a certified public accountant who opines that, in essence, at the time of Smith's death, Smith and his family were not facing a "financially devastated situation from

4

which there was no alternative." (Price Report at p. 6; Price Dep. at 165:9-25.) Prudential argues, without citation to Price's report or deposition, that Price's opinions are inadmissible because he impermissibly relied on the opinions of a bankruptcy attorney who was not retained or disclosed by Plaintiffs as an expert pursuant to Fed. R. Civ. P. 26(a). Prudential should identify the relevant portions of the record that establish the degree to which Price allegedly relied on the opinions of this individual and articulate in greater detail why any such reliance justifies limiting or excluding his opinions at trial.

### C. William Manion

William Manion, M.D., Ph.D., J.D., M.B.A., is, *inter alia*, the Director of Pathology for Virtua Health (a private company) and a Deputy Medical Examiner for Burlington County, New Jersey. Manion appears to set forth at least four opinions in his report: (1) the medical examiner who performed the autopsy significantly deviated from the relevant standard of care before declaring Smith's death a suicide, leaving certain questions un-investigated and/or unanswered (Manion Report at p. 9); (2) the "evidence supports a number of possible scenarios that would not justify the manner of death as being labeled suicide" (*id.* at p. 8); (3) "the manner of death of Gary Smith is not suicide but more correctly stated as accident" (*id.* at pp. 15, 16); and (4) "the manner of death of homicide cannot be ruled out with certainty." (*Id.* at p. 16.) However, Manion also testified that "my opinion is much more open than [the medical examiner's] opinion. She's saying it's a suicide. I'm saying, well, *I don't know*. It could be an accident. It could be a homicide for all we know. *So I'm still not sure what it is*." (Manion Dep. II at 264:4-9) (emphases added.)

Prudential argues that Manion's opinions are inadmissible because (1) Manion

5

impermissibly relies, verbatim, on self-serving and unsupported information provided to him by Plaintiffs' counsel;[5] (2) the alternative factual scenarios for Smith's death that Manion posits are speculative; and (3) Manion offers opinions on issues outside of his expertise. Prudential must articulate which of Manion's opinions – including his opinion regarding the sufficiency of Lewis's autopsy investigation – it seeks to exclude at trial. Furthermore, Prudential should articulate the degree to which Manion allegedly relied on unsupported information in rendering his opinions – particularly as to information provided to him by Plaintiffs' counsel – and which of his opinions should be limited and/or excluded on that basis. Finally, Prudential must identify what it believes to be the scope of Manion's expertise and identify which aspects of Manion's opinions it believes fall outside that scope.

For their part, the Plaintiffs, in a word, face an uphill climb concerning Manion's opinions. First, the Plaintiffs should be prepared to show that any crucial "facts" challenged by Prudential (and relied upon by Manion) are supported by admissible facts that are or will be established by the record. Second, the Plaintiffs must clarify which opinions Manion will seek to offer at trial, including whether Manion holds each particular opinion to a reasonable degree of scientific certainty, and must specify which alternative theories for Smith's death, if any, that

---

[5]It appears that a substantial section of Manion's report contains the verbatim recitation of information contained within a three-page retention letter from Plaintiffs' counsel. This is particularly problematic because some of the facts cited by Manion that were provided by Plaintiffs' counsel do not appear to be supported by the record and/or reflect significant inferential leaps that may exceed the bounds of reasonableness, at least based on the existing record. (*See, e.g.*, Manion Report at p. 3 ("Gary had changed from his business clothes to the hunting clothes in the Fincher house and had apparently lain on the bed and watched television while it was raining, before going to the shooting house. This implies that he was concerned about getting wet and uncomfortable so he waited out the rain.").)

Manion intends to posit to the jury.[6] In so doing, the Plaintiffs must articulate to the court why, consistent with *Daubert* standards, these alternative theories are premised on a reasonably sound methodology that attempts to reconcile the forensic evidence concerning Smith's death with each theory, rather than on pure speculation, as seems to be the case for at least one of the posited alternative theories.[7] Furthermore, it does not appear that Manion believes, to a reasonable degree of scientific certainty, that any particular theory of Smith's death other than suicide reflects the actual cause of Smith's death. If the Plaintiffs intend to have Manion testify concerning alternative theories of death that he does *not* hold to a reasonable degree of scientific certainty, the Plaintiffs must explain why that testimony should be admissible here. Ideally, the Plaintiffs should identify instances in which courts have admitted testimony from an expert concerning alternative theories of the case, even where that the expert does not hold the alternative theory to a reasonable degree of scientific certainty.

It is so ordered.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] The court expects that the Local Rule 39.01 statement by Manion will address these concerns, thereby narrowing the issues in dispute.

[7] For example, Manion states one alternative theory as follows: "It is even possible that a second person was helping Gary Smith get his gear into the shooting house and as he or they slipped Gary grabbed the gun trying to keep the second person from falling off the ladder and by accident the second person holding the gun discharged the weapon killing Gary Smith by accident. The second person then panicked and fled the scene fearing no one would believe such a scenario." (*Id.* at p. 16.) However, in his report, Manion admits that "*there is no physical evidence to support such a theory . . . .*" (*Id.* (emphasis added).)

7